HB-1075, Termusaya Jewelry, Inc. v. Certain Underwriters at Lloyd's of London All right, would both attorneys that are going to present arguments step up to the podium and identify yourselves for the record? You can both step up. All right. Kenneth Atzbach on behalf of Termusaya Jewelry. Brian Rodman on behalf of Certain Underwriters at Lloyd's of London. All right, so each of you will have about 15 minutes to present your oral argument. And Mr. Rodman, you may save some time out for rebuttal. Thank you. I'd like to allocate four minutes to rebuttal. Okay. All right. Your Honor, I also have a cross appeal. Yes, that's right. Glad you reminded me. So how do you want to do that? Normally, with cross appeals, we usually let the... You're going to address your cross appeal, obviously, during your presentation, correct? I can. I don't have... All right, well, let's assume this. The person who's going to have the last word is Mr. Rodman. So Mr. Rodman's going to begin, and he... Are you going to address the... What do you want to do? My intention, Your Honor, was to just address the arguments that we are affirmatively appealing. Okay. The issues that we are affirmatively appealing and not get into his cross appeal. Until you hear from him. That's correct. Okay. All right. Well, so here's my suggestion. You're going to begin. You're going to respond to his issues. You're going to then present your cross appeal. All right? Then, I guess, you're going to respond for whatever. And then, is it... You want to end? Is that what you want to do? I don't really... That's normally not how we, you know, do this. I'll do it how you normally do it. Okay. All right. Well, let's worry about it later. Okay? Yes. Very well. We're going to begin and we'll see how everything flows. May it please the court. We are here because the circuit court found a contract ambiguous, despite that both contracting parties agreed, while under oath, to the same understanding and same interpretation of the contract. Specifically, in granting summary judgment in favor of Termasaya, the circuit court incorrectly found that the policy was ambiguous as to whether it contained conditions for the two-person warranty, the safe warranty, and the locked door and showcase clause. Counsel. So, your position is that the contract's unambiguous, correct? That's correct, Your Honor. But at the same time, you argue that we should consider the depositions because they reveal what the intent is of the parties. So, isn't that asking us to look at its strengths and evidence when you're arguing that it's unambiguous? It's not, Your Honor. There is first district case law that says that we look to the intent of the parties. That is one of the primary means that we use to interpret a contract. But don't we usually do that with the document itself? That's where we glean the intent. We don't normally go outside the four corners to determine intent. But there is first district case law that's on point that says where the parties have the same understanding of the contract, the same interpretation, and also how they act during the course of the contract. We can look directly to that. Well, aren't they basically saying, though, that the provision that says express warranties, none, is not, they're not interpreting that the way you are. Sure, that's the argument that they made. That's a lawyer's argument. And that's how the circuit court interpreted it. He said, well, that's a lawyer's argument. But what we want to look to is the intent, the truth-finding process. What did the parties... What was the intent of that provision? I don't seem to get a real strong sense in the brief what you think that phrase means in this contract. And I'm directing specifically to express warranties, none. Sure. I think the intent of that provision is when you have a situation where the policy's vitality depends on the insurer being in compliance with something. For instance, you often see in first party policies a protective safeguard condition. And for instance, if you have a restaurant, that requires the restaurant to maintain an active sprinkler system at all times in the kitchen. And that's just added protection for the insurer that, hey, if you don't have this provision or the sprinkler system in place, the policy's going to be deemed void. And Illinois law is clear that when you have a provision like that, an express warranty which goes to the life of the policy, it must actually say that. It must say that this policy is void if you don't comply with it. Did you cite a case that says that? That says that this provision isn't there and it's void? The provision that says... That's right, Your Honor. We did in the reply brief. I believe the case is McCree. It is an older case. It's a 1935 First District case. Okay. I have a question about the policy. So you have a lot of warranties in here and then there's some language that describes what... I'm sorry, Your Honor. I'll wait until it passes. Thank you, Your Honor. Sure. Okay. So there's a number of warranties that are listed in the contract or the insurance policy. And some of those, like the two-person warranty, the safe warranty, they have a descriptive paragraph underneath basically trying to explain what is meant by those particular warranties. Right. However, when you get to the express warranties, all it says is just very clearly, just one word, none. Exactly. And I think that demonstrates an intent that these things mean different things. They're in different sections of the policy and that's important. And that the warranties, the two-person... Is the two-person warranty an express warranty or not? It is not. It is a condition, Your Honor. Well, I mean, that's probably the big question here. It says it is a warranty under this certificate that a minimum of two persons each of whom is either an employee or a principal of the insured or person authorized, blah, blah, blah, whose duty it is to safeguard the premises, be present during the opening and closing thereof, and during all hours. So you're saying that this isn't an express warranty? I am not. And the reason for that, Your Honor, is if you continue on past all the conditions and you get to what sort of sums up the clause... Well, actually, yeah, go ahead. It says, this insurance excludes all risk of loss of or damages to the property insured here under incurring at the insured's premises unless the above conditions are complied with in full. So it acts as an exclusion. And that's the critical language. And that's what distinguishes this between an express warranty. Let's go back, though, to those. Because the two-person and the... What's the other one? There's the safe warranty. Yeah, safe, yeah, all right. So we go back to that. They're called warranties. That's right. But then you're calling them conditions. And they're not listed as conditions. And then later, we have lock door, show window, and showcase clause. And in consideration of the premium, which, blah, blah, blah, it is a condition receipt. So the drafters, the drafters, the drafters said, this is a condition. They did not say that the two-person or the safe was a condition receipt. Did they? They did. It's actually right on the top where it's in the section entitled conditions. Now... Well, wait, where is that in the... Tell me where that is in the appendix. Sure, in the policy itself, Your Honor. Well, where I can look at it here. Yeah, so above the two-person warranty. I'm reading the paragraph that clearly calls the lock door, show window, and showcase a condition. But nothing says in the warranty, the actual language, that it's a condition. But that's what they did when they described the lock door, the show window, and the showcase. Your Honor is correct in that within the safe warranty and locked, or at least in the safe warranty and the two-person warranty, they don't use the word condition. But it's within a section that's entitled conditions. And then it's summarized at the end by saying this insurance excludes all risk of or loss or damage to the property insured here under, occurring at the insurance premises, unless the above conditions are complied with. Well, if that's true, if that's true, and that condition is in there as a condition receipt, prior to that, you call it a warranty. So that makes it ambiguous, doesn't it? It does not. And that's the importance of it. When you have two inconsistent statements? But it uses the word warranty. And there's a separate section entitled express warranty. And an express warranty has a recognized legal meaning. It does. It goes to the policy itself that an insured has to be in full compliance with something, again, like a sprinkler system. Isn't that exactly what the two-person warranty and the safe say? No. These are transient obligations, Your Honor. An insured cannot be in compliance with all of these at one time. For instance, he cannot have all of the jewelry locked in the showcase and at the same time have all of it in the safe. So these are conditions based on a certain period of time in which the insured is either operating, closed. I don't think there's any case law that suggests that that makes something, that that takes it out of the notion of being a warranty, simply because they operate at different times. I don't think you've cited a case that says that. I think you have to look at warranty, how it's used in context. Does warranty say, is warranty just being a guarantee? You're guaranteeing to do this. And if you don't do this, there's either no coverage or the policy is void. So that's the language. Let me ask you this. If you were writing this policy today, would you write it the same way? I think the question of whether or not it could have been written better is different than whether it's susceptible to two meanings. In hindsight, of course, there's things that I would do to button it up. But that's just about every contract dispute. You'd look back in retrospect and say, yeah, we could have tightened this wording up. But it's an insurance contract, and it's meant to cover a whole series of insurers. Where does the provision that says, express warranties not, come into the policy? Where is that placed? It's placed after the conditions? That's right, Your Honor. OK. Let me ask you this. On the other condition, we certainly know that the locked door, store window, and showcase clause is a condition, right? That's right, Your Honor. And did you argue, and did the court conclude that, or could it have concluded, since we can affirm on any basis, that it says that all entrances and exits shall be locked at the close of each business day prior to the removal. So this was a condition. And doesn't the information or the facts show that this was not a mess? That's right. And we argued that, that it did not comply with the condition. But did the court say that, even if these other things weren't equal, that you establish this, there's no question of fact on this particular condition? We know this is a condition. And the circuit court disagreed with that. The circuit court read all of these conditions out of the policy, which violates one of the rules of construction. The idea behind it is the harm did not go away. You did argue this was a condition. We did. We argued all of them. Setting aside the warranty issue, you did argue this is clearly a condition preceding, and it was not met. So regardless of this other ambiguity, this provision clearly says, you do have to do this. You didn't do it. Therefore, we're entitled to summary judgment. That's exactly correct. So based on your argument, where does, on the contract, if you look at it, where does conditions start, and where does conditions end? Sure. So condition starts right above the two-person warranty. That's where it begins. These, importantly, are conditions related to the premises. So there's other coverages within this policy. All right. Now where does it end? And it ends right after it defines premises. And then you see notices underneath. There's a no claims bonus clause, and then notices. So the no claims bonus clause is not a condition? No. All right. And then the next paragraph, which goes to notices, is not a condition? That's correct. So the first warranty that we get into this is the express warranties? That's correct. I just want your interpretation. Yes. So again, an express warranty being different in this policy. So the warranties start when you say express warranties. Is that correct? The express warranties start. All right. So these other things that are titled two-person warranty is not a warranty? It's a condition, is our view. It says warranty, but you have to. I just want to get an understanding here. Same thing with the safe warranty, right? That's right. And I'm not sure. I mean, you can call it a warranty, and you can call it a condition. I'm not calling it anything. That's what's in the policy. Sure. And I don't know that there's really a difference between calling it a condition or calling it a warranty. What matters is the language that uses to explain it. So for instance, if it says, this is a condition, and if you don't comply with this condition, the policy is void. But you're inserting language. You're inserting that this is a condition, and if you don't comply. But the policy author specifically said that for the locked doors and the stored. But it didn't do that for these other, the two-person and the... For those as well, it said that if you don't comply with these conditions, then there will be, the coverage is excluded. But wait a minute. Where does it say that? The other conditions, it clearly says. The language immediately follows that other. Whereas now you're taking out, you're directing us to a provision that comes much later. No, it's part of, so you have the conditions, and this clause sets forth the condition, and then it explains the effect of not complying with these conditions when it says this insurance excludes all risks of loss or damage to the property you're insured you're under occurring at the insurance premises unless the above conditions are complied with in full. The above conditions are the two-person warranty, the buzzer entry-exit clause, the safe warranty. That's the whole appeal here. No, it's... Well, it is because the drafters chose to say it is a warranty under the certificate that a minimum of two persons. No language about a condition. Then it says it is warranted that 100% of staff. No statement of condition. Then we're going down quite a bit. There's some spacing here. Then we go down to locked door, show window, and showcase clause where it says it is a condition proceeding. So, I mean, the issue is are they warranties, or even if they aren't, is there ambiguity or is there inconsistency so that someone reading this would say, well, this says it's a warranty, and this says it's a condition. So the question is, is there some ambiguity? There isn't. And we know that because the insurer himself testified in his deposition that he understood that he had to comply with these conditions. And he actually explained how he complied with them and then affirmed at his deposition that he did comply with them. But I think that's also putting the cart before the proverbial horse because we don't normally go outside the contract to come up with all these things that you're saying. Unless it's ambiguous. You're saying there's no ambiguity, there aren't warranties, and so we don't need to listen to what they have to say. We can always look to the insured's testimony or the party's mutual understanding of the contract to establish the intent. But wouldn't that be a better argument before this Court to say, hey, there's an ambiguity, I mean, my God. We do make the argument. And then say, well, okay, the parties knew what was going on. Wouldn't it be a better way to go? We did argue that, Your Honor. I understand that. Yeah. But you're also arguing that there's no ambiguity. You know, that's like saying this pencil is a P. I truly don't believe that if we follow the rules of construction, Your Honor, that there is an ambiguity here. Again, it uses the word express warranty and the word express is nowhere within those, the two-person warranty, the safe warranty. You wouldn't call this, I know your argument is it's a condition, but you wouldn't call this some sort of implied warranty, would you? No, I don't think it was the... Take a Hornbook definition of what an express warranty is and let's remove the locked doors thing. Someone reading that could easily conclude, couldn't they, that this is actually an express warranty? No, because it doesn't include the words and the policy will be deemed void. If you look at the Hornbook definition of an express warranty, and we cite to that in the Couch Treatise, that it goes to whether or not a policy is deemed void or not. And again, that's consistent with Illinois case law. And then the policy language here never says anything about those provisions, that the policy will be void if the insurer doesn't comply with the two-person warranty. It doesn't say that. No, but it does say there are no express warranties, so I don't know if they have to comply in any event, if you interpret those as your opposing counsel's comments. I have a question regarding the policy. So, if you look at the Exhibit A38-43, there are insuring conditions that are also listed here. It's on the appendix. I'm sorry, Your Honor, is there a paragraph? Paragraph 5, insuring conditions. It's A38 in the appendix. Yeah, I apologize. Okay, I see it, I see it. Okay, so these are other conditions as well, right? They are. Alright, so when these depositions were taken, were you clear about what conditions specifically were being referred to? Absolutely, Your Honor, and that testimony, again, set forth in the brief. We asked it in an open-ended way, too. We didn't say it in a leading way, and this is what the two-person warranty means. We said, what is your understanding of the two-person warranty? What did you do to comply with it? And the insurer set forth his understanding and what he did to comply with that, and that was consistent with underwriter's understanding. Alright, so the two-person warranty, as you say, is a condition, as well as the safe warranty, but if you look at these insuring conditions that are in A38 through 43, you don't see any mention of warranties. No. I'm not seeing any, Your Honor. So doesn't that mean that maybe that's what exactly was meant by the drafter? Because you didn't draft this, so the drafter might have meant that there's a warranty with regards to two individuals, two persons, and also a safety warranty? No, I think these conditions, the two-person warranty, these are conditions expressly related to the premises itself and what the insurer has to do, and this part of the policy deals with the premises. So I think that's why they're in separate sections. So why isn't that an express warranty if they have to do this? If they have to do what? I'm sorry, Your Honor. They have to have the two persons present and have to have the safety. Because the policy is not void if they don't comply with it. So earlier you were responding to my question about the express warranty, and it says none, and it has no explanatory paragraph, and you were trying to address that question. So what's your response to that again? As to why it says none? Right, well, there's no, you know, it just says none and that's it. Right, and I suspect there are some policies that the insurer issues that do have express warranties that go to whether or not the policy will be void. Maybe there's an insurer in a high-risk area, and the insurer says, look, we're not going to insure this unless they have this type of alarm system in place. And that's where they would say, okay, this is an express warranty, and this policy will be rendered void if it is not complied with. And you're saying there's no confusion at all here, because on the one page you've got conditions, but then the language is sandwiched in about warranties. Then you have other language saying the locked-door thing is a condition, precedence, and then you've got the conditions continuing, and then right after that you've got express warranties, none. I agree that the policy can be hard, like all policies, but I don't believe it's ambiguous, Your Honor. I think if you read the whole policy as a whole and look to the intent, I don't believe it's ambiguous, and we have to be guided by the rules of construction, and especially that the same words can mean different things in different contexts. In this context, the intent was to exclude coverage if the conditions weren't complied with. It wasn't to void the policy. Yeah, how about your argument that the parties understood what this policy meant? I'd like to hear that argument. Sure, and that's largely reliant on the deposition testimony, is the insurer had the same understanding, and I think that's what we're really after is what was the party's intent, and when the parties have the same intent, we don't have to even get into the rules of construction. We can use what the party said, and that's an admission. It's yes, this policy is clear. I understood what the policy meant, and I complied with it, and I had the same understanding as the other side, but the court disregarded that, and we can't disregard an admission. Was there testimony by the jewelry store that they understood that if they didn't have two people there, the policy would be void? I believe that's what the – I don't recall that. I mean, where is that? No, as far as whether it would be void, that specific part, no, but as far as did the insurer understand it had to comply with the two-person warranty because that was a condition to coverage. That, I believe, the insurer testified to. Of course, you didn't call it a condition, but you say that if you read it as a whole, it's a condition, but when you make the argument that the parties understood what all these things meant, where is there any testimony that anyone from the jewelry store understood that if they didn't have two people there, the policy would be void? It wouldn't be void. It just wouldn't be – It wouldn't be covered. It wouldn't be covered, rather. That's right. Okay, covered. Right. There would be no coverage. I think we're all still trying to figure out, which might be an indication of some confusion, what is it, again, that you say express warranties, none, means? It means there is nothing in the policy for which the insurer had to have an obligation that the insurer had to be in compliance with at all times. But where would we get that from? Because we only have three words here, express warranties, and then a colon, and then none. Sure, and it's a legal definition, but the insured knows that, okay, whatever those express warranties are, it's none. It is insurance language, like most of these policies, which can sometimes make it hard, but it does have a recognized legal meaning, and you see it especially in marine insurance. Yeah, but we're not in a marine policy. But how could the insureds understand this if we're up here debating and talking about what this actually means? And you had to add a bunch of language to tell us what it meant. I think an insured would understand that they would have to comply with the conditions in this policy that are set forth, as the insured did testify, and that there would be no express warranties. Now, that could be a question that the insured came back to his broker with, what are express warranties? And this policy, like just about every Lloyd's policy, says, if you have any questions about this certificate, go talk to your broker, and that's on page 2, and return it immediately to your broker for alteration. All right, we're going to let opposing counsel come up. You're going to have time for rebuttal and, of course, to address the cross-appeal as well. Thank you. All right. Thank you. Good morning, Your Honors. Good morning. I'd like to address some of the questions that you just asked my opposing counsel. Actually, underwriters did say in their brief at page 13 and page 15, what they found was the meaning of the word express warranty, and what they said was the meaning of the phrase none. And they said that express warranty, the meaning of express warranty is distinct, and that's on page 13, and that the word none on page 15, quote, means that the policy contained no express warranties. Counsel said that his other, he says the policy, he says it's required to make it have meaning that the policy does not state it will be rendered void if T.J. did not comply with any of the above provisions. He says case law says that normally that would be an indicator that something was an express warranty. Okay. Well. What do you say to that? Okay. What counsel is talking about is the distinction between affirmative warranties and promissory warranties. Affirmative warranties are warranties that say certain facts are true. Yeah. Isn't that an express warranty? That is an express warranty. A promissory warranty is a warranty that says certain facts will be true. That is also an express warranty. So it is immaterial whether we're talking about an affirmative warranty or a promissory warranty. Counsel is saying, is trying to make some distinction between affirmative warranties and promissory warranties. They are both express warranties, as the court recognizes. What about this other provision? You certainly would agree that lock door, show window, and showcase clause is a condition preceding to coverage, would you not? Yes. Don't the facts show, based on the deposition testimony and the record, that this particular condition was not met? Your Honor, the facts show that underwriters denied coverage. Well, they purport to have denied coverage. They sent a reservation of rights letter, and the sole basis on which they reserved their right to deny coverage was the two-person warranty. So that's your response? Yes. All right. But we can affirm on any basis, can't we not? Yes. All right. All right. Well, go on with your argument. Counsel, I have a question regarding the express warranties. In looking at the record, it appears that this argument was not raised by a client until much later in the litigation. It wasn't originally raised as an argument. Why is that? It's a legal argument, Your Honor. I understand that. Yes. Okay, it was not raised in the complaint. If that's what you're asking, that is correct. Why? We didn't file the complaint. Pardon? You didn't file the complaint. It wasn't just filed by the attorney. No, we filed the complaint. Oh, yes, that's right. I'm sorry. That's all right. It was not raised in the complaint. The reason it was raised later on in the litigation was that in the deposition of the chief claims officer of underwriters, I was asking him a question about their reservation of rights letter and why it did not contain the form language that is required by the Illinois Insurance Code that's applicable to denial letters. And he said, those provisions are not applicable to us because we are a surplus lines carrier. Okay? Okay. And so then I took another look at the whole policy and really this is what happened. And then I looked at the whole policy again and I saw this language. So I realized that all of the dispute that we had been talking about theretofore was really irrelevant, was immaterial, because whether or not the two-person warranty was complied with and whether or not the safe warranty was complied with is immaterial when you have a provision in the policy that says express warranties none. That's really how it happened. Isn't your argument then that this is ambiguous, inconsistent, whatever? No. Policy? No, no. There's nothing ambiguous about the policy except in a general way. So the language of the provisions, underwriters and termici agree, the language of these provisions is unambiguous. But what you have is you have really three unambiguous provisions, the two warranties we've been discussing and the language express warranties none. You're saying there is no confusion there. The language of each of those provisions in and of itself, in and of themselves, is not ambiguous. But when you have those provisions. Why is it ambiguous? I mean, I think you're taking a contrary position here. On the one hand, you're saying the two-person warranty and the safe warranty are warranties, right? Yes. And you're also saying that the contract says there are no warranties. Correct. So how are you saying that there's no ambiguity there? That's where the ambiguity is. So you have three unambiguous provisions, but there is an irreconcilable conflict between the language of each of those unambiguous provisions, and that's where your ambiguity is. Doesn't that create an ambiguity? That creates the ambiguity. That's correct. I'm saying it's not an ambiguity. Because if you say it's not an ambiguity and we believe you, then we can't fight in your favor. The policy in a general way is ambiguous, yes. I agree with that. Then don't we look at the ‑‑ don't we go outside the document, then, and listen to what the parties intended? No. Well, that's ‑‑ And the reason for that, Your Honor, is the longstanding rule in the state of Illinois that where there is an ambiguity in the policy, you construe the language against the drafter. Don't we interpret insurance contracts pursuant to general contract law? The courts have made that statement, but when you look ‑‑ They've made that statement many times. Many times, but when you look at ‑‑ One of your primary positions here is that for insurance policies, we never ever go out and take testimony and try to determine the intent from the parties. That's your primary position here, isn't it? That's correct. In a coverage case, yes. You're trying to determine the meaning of the provisions. In coverage cases, the courts never ever look to the intents of the parties from something other than the four corners. Isn't that your position as well? That is our position. But that's not really the law, is it? When we have an ambiguity in a contract, we can go outside the four corners, and it is not limited to contracts that are anything other than insurance contracts. After all, this is a contract, is it not? It is a contract. The case authority, Your Honor, though, that is cited by underwriters in their brief, the only cases where that was even considered are not coverage cases. Those are cases where, for example, there was a dispute about the amount of premium due under the policy. So these are contractual disputes that are really incidental to the meaning of the coverage provisions under the policy. And then you would say that because it is, well, you were pitching now about the ambiguity. But we're agreeing there's some ambiguity. Yes. And, therefore, we always interpret it in favor of the insurance. Correct. All right. Yes. All right. What about your cross-appeal? You've got two. Okay. All right. And your cross-appeal, don't you have to prove malice? No. That they were unreasonable? No. You don't have to prove any of those things? No. It's nowhere in the statute, Your Honor. I thought it was a vexatious delay. Oh, okay. Well, you're talking about the vexatious delay under 155. That's one of your cross-appeal issues, isn't it? That is one of our issues, yes. I believe it's sufficient, Your Honor, to say there is provision in the policy that says you have to pay this claim within 30 days after submission of proof of loss. There is such a provision. It was not done. And, in fact Didn't they reserve their rights? They reserved their rights, but here we are five years later and we have a reservation of rights and no check. All right. But that's not really the same. That's not what that statute says. That's not what the law says. Vexatious delay means that they really had no reason not to pay. That's what that means. Very simple. They had no reason. You don't think they have a reason? That's why we're here. Insurance companies always have reasons. No, they don't. No, they don't. Sometimes they don't. I think the issue is whether it's a valid reason. Yes. Now, how are we reviewing the trial judge's decision that they had a valid reason? I didn't understand your question. We're a court of review. Yes. There are standards of review for every issue that comes before us. Yes. Okay. Under the rules, the parties are supposed to enunciate in their briefs what the standard of review is for every single issue. We're reviewing now the trial court's denial of your request for sanctions under 155 of the insurance code. Are we not? Yes. All right. And the court denied your request, correct? Correct. As a reviewing court, what standard of review are we using to determine whether the court erred? I believe it is whether it's an abuse of discretion. And isn't that the most deferential standard of review? That's correct, Your Honor. All right. All right. So knowing that's the standard of review, tell us why we should find the court abused. It was a he, I believe, his discretion, Judge Taylor. I have nothing to say other than what I've said, Your Honor.  What about the other issue? Okay. The other issue is this, Your Honor. If in the unlikely event the court were to reverse the trial court's decision on count one of the complaint, then it brings to the fore our motion to strike the answer of underwriters. We moved to strike the answer of underwriters because underwriters did not host a prepleading security bond, which is required under Section 12110 of the Illinois Insurance Code. Does the code provide what will happen in the event that they don't host sufficient security? You know how some statutes say if this is not complied with, such and such will occur. It often comes up in whether something is mandatory or directed. Does the statute say what happens if it isn't? I don't believe so, no. Okay. All right. Well, under the case law, you know, if there's no consequence, then courts normally determine that that particular provision is directed, not necessarily mandatory. I understand that rationale, Your Honor. In this case, though, they did not post any security whatsoever at any time. They did not post any security, and while no Illinois court has construed this provision, it was construed by the Supreme Court of Connecticut, which found it to be mandatory. All right. Which we can look at for guidance. You can look at that for guidance, yes, Your Honor. And that's really my argument. All right. So I guess I'm going to let counsel respond. And then I will let you respond as far as your cross-opinion. Thank you. All right. Counsel. Thank you, Your Honor. I'd like to draw the court's attention to the McCleary case that I referenced in my initial argument, and it states as follows. And I think this clarifies some of the difficulty that courts have with warranties, but emphasizes the language that if it's an express warranty, the policy has to say the policy will be void. It's not, the case states as follows, it's not always easy to determine just what language amounts to a warranty. If the contract, however, declares that the statements made in the application touching the subject of the insurance are warranted to be true, and that the policies shall be void if they are untrue, the falsity of any such statement will defeat the insurance. The emphasis of this case is that if it's going to be the type of warranty that goes to whether or not the policy remains in force, that has to be said. It's going to say this is a warranty, and the policy is void if you don't comply with it. Again, our policy says this is a warranty, and if you don't comply with it, coverage is excluded. So there's a difference. And then I want to address counsel's argument as to what do we do if we determine that the policy is ambiguous. And the circuit court and counsel's position is that, well, you automatically find it in favor of the insured. And that's just not true. It's Supreme Court case law, this case law from this district, that we then treat it just like any other contract. And we look to. But he said that the cases you cite aren't really insurance coverage cases. That's simply not true. And we cite the cases in our reply to rebut that. One is the LaSalle case, which, although it addresses issues regarding premium, the very first line of the case says, we are here to interpret a policy. And it goes on to address extrinsic evidence. And, of course, if it was the rule that ---- Going back to that discussion, did any of them, any of the persons that testified at all at the depositions, have any opinion whatsoever on what this clause meant, express warranties done? No. There was no testimony. Nobody really did understand, or they didn't testify, as to what their understanding was. There's just no testimony on it. No one was asked that question. Or at least the insured wasn't asked that question. Okay. All right. But then going to this Court's opinion in CNA v. California v. E.C. Backler, and that's 361 Illa Pellett 3D 619, the Court says, if the Court finds that the language of the policy is susceptible to more than one meaning, then an ambiguity is present and we may consider parole evidence to resolve the ambiguity. Do we have a problem in this case because you just, you know, agreed like a minute ago that nobody ever testified about what express warranties done means? It's not that no one testified. The insured did not testify. Okay. What was the testimony of the insurance company? Mr. Seid testified that it is something that goes to whether or not the policy remains in effect. That was his testimony. Okay. And what is your position that since the insured didn't testify about it, then it's, there's no question of material fact? No. I mean, we just don't know. The insured just had no testimony as to what express warranty means. All right. But then the case, any unresolved ambiguity will be construed against the insurer. So we first go through that step of saying, okay, do we have evidence that interprets what the policy and party's intent was? And if we, after looking at that extrinsic evidence, then it still remains ambiguous, then, yes, that's when we find against the insurer. But we still go through that exercise just like any other contract. So what about cross appeal? So as to the cross appeal, as far as his section 155 claim, counsel didn't move for summary judgment on that. So he can't appeal any denial of his own summary judgment, which is what his brief says. As for the summary judgment granted in our favor, again, there was nothing in response in his briefs to it. So it was basically an unopposed motion. So we're somewhat surprised to see this issue up on appeal, especially with the standard of abusive discretion. But clearly there was a bona fide excuse to, bona fide reason to deny coverage here. As we went through in our motion for summary judgment, all the reasons for why the insurer did not comply with the two-person warranty, and the evidence is significant. I mean, it's contemporaneously recorded statements by the insurance company immediately following the loss. It's alarm service records. It's insurance applications indicating that the hours of operation is 6 o'clock. It's an open sign in the store being illuminated, and an affidavit from an officer confirming that the open sign was illuminated when the officers arrived on scene. It's a pre-inspection survey of the hours of operation being 9 to 6. And all of this evidence supports that the insurer was open. His store was open at the time of the robbery. Indeed, they opened the store for what appeared to be a customer. The jewelry is still in the showcases. During the arguments at the trial level, was there an explanation as to why it appears that there's two different signs, one at one time and one at the other? They did not offer any. That's probably the most damning piece of evidence. During discovery, they produce a document, which they claim is their hours of operation, and it says 9 to 5. Yet when we subpoena the crime scene photographs from the police department, it's a completely different sign. And they just, during the deposition, said, yes, it's a different sign, and they conceded. It's really hard to make out, even when you zoom in, what the hours of operations are on the sign, but it appears to be either 9 to 6 or 9 to 8 for Saturdays. All the pre-inspection surveys and applications said 9 to 6 for Saturday, so my belief is that it says 6 o'clock. But remarkably, they then present that document again, that hours of operation sign, at summary judgment, despite that they testified in their deposition that, yeah, that wasn't the sign on the door. What's your argument about the bond? Yeah, so the bond argument gets raised after the close of discovery. So that's the first time it's raised. And, one, I believe that we substantially complied with the requirements. So if the insurer issues a policy in accordance with Section 445, then they don't need to post a bond. And counsel cites two reasons for why we didn't comply with that section, one being that the policy wasn't countersigned. But that part of the Surplus Lines Act doesn't apply to the insurer. It applies to the surplus line producer, much like much of the sections in 445 deal with what individuals other than the insurer must do. It's largely the surplus lines producer, and we can't control whether the surplus line producer pays its annual fee. So the meaning to be a surplus lines producer, so my understanding of what they're saying is, okay, the insurer itself, those obligations that the insurer must comply with, if they comply with it, then they don't have to post prepleading security. And the only argument then remaining is that the notice section in the policy appears on page three rather than page one. So the policy is supposed to have a surplus lines notice, saying this policy is issued in accordance with the Surplus Lines Act, something to that effect. Are you aware that Lloyd's of London, as a foreign corporation back in the day, always posted a bond in every state that they did business with? And would that bond be the same bond that would be used here? Respectfully, Your Honor, I am not familiar with that aspect of it. Of course, the Department of Insurance could waive a bond if they want. Yes, and the case that counsel relies on, even if we were found to not be in compliance, the remedy in that case was the court says, okay, post your bond. You're not automatically in default. You have the opportunity to post your bond if we find that you didn't. Yeah, that would be an extreme remedy. That's right. So, again, I think the question is whether did we substantially comply with the statute. And merely because the notice provision is on page 3 and page 1, I don't think Termasai could claim that they're prejudiced by that. They knew this was a surplus lines policy because their broker was the one who obtained it through surplus lines means. The statute doesn't provide for any consequence if the bond isn't posted, does it? It does not. And you posted a bond for the appeal? That's correct, Your Honor, $600,000. All right. Is there anything else you want to address as far as the cross appeal or anything else? Just that if this panel agrees that the policy is deemed unambiguous and it's clear that summary judgment also be entered in favor of underwriters because I believe the undisputed evidence shows that they weren't in compliance with the two-person warranty. And even if they were, close that the lock door showcase clause or the safe warranty would apply to defeat coverage. So either way, summary judgment would prevail no matter what version of the facts they present to this panel. All right. Thank you. A brief statement now. This is only related to your cross appeal, if you understand that. Your Honors, with respect to the cross appeal on the issue of the prepleading bond, Your Honors asked various questions to counsel, and I wanted to address his argument that underwriters substantially complied with the requirements of 12110. And I suppose this would go to whether it's mandatory or directory. And as I said, the Supreme Court of Connecticut and a U.S. District Court sitting in Connecticut both said it was mandatory. But then wouldn't they have the opportunity to post the bond if the court had held it? They would have an opportunity to post the bond. And that is why what we're saying is that if the court were to reverse the trial court, then it should be sent back down to the trial court to determine the amount of the bond. Sure. All right. Now. Did you ever make a motion before the trial court to require them to post the bond? I did. That was the motion to strike the answer. Okay. Yeah. And what happened to that? It was denied as moot after the summary judgment was granted. All right. And also, counsel made the argument that it was our agent who didn't obtain the counter signature of the Surplus Lines Association. But the policy specifically states that the surplus lines broker, what they call SL broker in the policy, was their own agent, Jeffrey Dieffenbach of Burns & Wilcox. And that's at RC 1228. And there's another reference to Burns & Wilcox as underwriter's agent at RC 948. Thank you. This case was very, very well argued and very well briefed. A lot of issues here. We will take the matter under advisement. And the court now stands adjourned.